IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ESTATE OF LERNARD GRIGSBY, by and )
through his son, KERRY GRIGSBY, )
and JESSICA GRIGSBY, )
)
Plaintiffs, )
) No. 09 C 1956
v. )
) The Honorable William J. Hibbler
Sergeant BRYAN FALAT, No. 4770, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

On October 22, 2010, after a trial, a jury found for Defendant Bryan Falat and against Plaintiffs on all counts, and the Court entered judgment on the jury verdict. Plaintiffs now move for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. They claim that the Court erred in its instructions to the jury and compounded that error by excluding testimony by Plaintiffs' police expert. For the following reasons, the Court denies Plaintiffs' motion.

### *BACKGROUND*

The events that gave rise to this lawsuit involved a confrontation between the decedent, Lernard Grigsby, Falat, and another officer when Falat and the other officer arrived at Grigsby's residence in response to an emergency call. That confrontation ended when Falat shot and killed Grigsby. Grigsby's family filed this lawsuit against Falat alleging, among other things, that Falat used excessive force in shooting Grigsby. One of the arguments that Plaintiffs made at trial was that even if Falat feared for his life or that of his fellow officer, he had adequate time to warn Grigsby prior to using deadly force. Plaintiffs argued that the testimony they elicited at trial suggested that the parties were not positioned as Falat claimed and that Falat was actually in a

1

position to issue such a warning. Plaintiffs also elicited testimony from Falat himself that, if the events transpired as Plaintiffs claimed, rather than how Falat claimed, he would have been able to warn Grigsby before shooting.

Prior to trial, the Court excluded testimony by the police experts of both parties, finding that the jury was capable of making its own determination as to the reasonableness of Falat's actions without the aid of experts. Plaintiffs' expert was prepared to testify that Falat not only had an opportunity to warn Grigsby, but that an Illinois State Police directive required a warning under the circumstances. Then, near the conclusion of the trial, the Court denied Plaintiffs' request that the Court include in its jury instruction on the use of deadly force a statement that the law requires an officer, whenever feasible, to issue a warning before using deadly force. Plaintiffs argue that the Court's omission of such a statement from the jury instructions constituted error and provides grounds for a new trial. Plaintiffs also argue that by omitting the statement the Court compounded the prejudicial effect of its decision to exclude Plaintiffs' expert's testimony, thereby rendering that decision erroneous and providing yet another basis for granting Plaintiffs a new trial.

## DISCUSSION

### I. Standard of review

Following a jury trial, Rule 59 permits the Court to grant a new trial to a movant "for any reason a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). However, the standard for prevailing on such a motion is high, as the Court will only grant a new trial if "the verdict is against the clear weight of the evidence, the damages are excessive or the trial was unfair to the moving party." *Miksis v. Howard*, 106 F.3d 754, 757 (7th Cir. 1997). An erroneous jury instruction can provide the basis for providing a new trial, but

only if: "(1) the instructions did not adequately state Seventh Circuit law and (2) [the movant] was prejudiced by the error because the jury was likely confused or misled." *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001). The Court will look to the jury instructions as a whole, along with all of the evidence and arguments, in order to determine whether the jury was misinformed about the law.

## II. Analysis

Plaintiffs base their argument on the Supreme Court's holding in *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985). In *Garner*, the Court addressed the question of whether a police officer violated a burglary suspect's Fourth Amendment right to be free from unreasonable seizure when he shot him as he attempted to flee from police after the officer issued a warning. The Court's opinion hinged on the question of whether the officer had probable cause to believe that the suspect had or would inflict serious physical harm. *Id.* at 21, 105 S. Ct. 1706. The Court ultimately held that the officer did not have such probable cause, and therefore held that the seizure was unreasonable. *Id.* In doing so, the Court determined that the Tennessee statute regarding the use of deadly force, which permitted the use of deadly force to apprehend a fleeing felon, was unconstitutional as applied because it permitted the officer's conduct. *Id.* at 11, 105 S. Ct. 1701. But, it also held that the statute was not unconstitutional on its face, noting:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, *and if, where feasible, some warning has been given*. As applied in such circumstances, the Tennessee statute would pass constitutional muster.

3

*Id.* at 11-12, 105 S. Ct. 1701 (emphasis added). In so stating, the Supreme Court certainly suggested, at the very least, that the question of whether a warning is given is a relevant and important consideration to the determination of reasonableness in some cases. Indeed, though the Court did not make it abundantly clear that it intended to make a warning a necessary precondition to finding an officer's actions reasonable whenever such a warning was feasible, the Court's opinion may reasonably be read to establish such a duty to warn. The Seventh Circuit has suggested as much. *See Ford v. Childers*, 855 F.2d 1271, 1275 n.6 (7th Cir. 1988). Since *Garner*, the Seventh Circuit has relied on an officer's issuance of a warning, among other factors, in finding certain conduct reasonable. *Id.* at 1276.

Defendant argues that *Garner* is only applicable to cases involving those attempting to flee from police. Undoubtedly, the *Garner* Court spent a great deal of time discussing that issue specifically. It is reasonable to assume that a situation where a warning is feasible, yet deadly force is justified, is more likely to arise when a suspected dangerous felon is attempting to flee because the officer's fear of serious physical harm might stem from the possibility of flight, rather than from the fact that the suspected felon is in the midst of an attack. In other instances when an officer is put in reasonable fear for his or her life, such as when someone reaches for the officer's weapon or is engaging in hand-to-hand combat, the officer is less likely to have both the time to issue a warning and the immediate fear of serious physical harm. Nonetheless, the Supreme Court has stated since *Garner* that the holding of the case was not limited to cases involving a person attempting escape. *Scott v. Harris*, 550 U.S. 372, 382 n.9, 127 S. Ct. 1769, 1777, 167 L. Ed. 2d 686 (2007). Thus, while it may be an issue less likely to come up in a case that does not involve an attempt to flee, the principles of *Garner* seem to apply in all cases involving the use of deadly force.

This conclusion does not end the inquiry into the propriety of the Court's instructions, however. The Court in *Scott* also made clear that "*Garner* did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.' *Garner* was simply an application of the Fourth Amendment's 'reasonableness' test to the use of a particular type of force in a particular situation." *Id.* at 382, 127 S. Ct. at 1777 (internal citation omitted). The Court noted that while an "attempt to craft an easy-to-apply legal test in the Fourth Amendment context is admirable, in the end we must still slosh our way through the factbound morass of 'reasonableness.'" *Id.* at 383, 127 S. Ct. at 1777-78.

In this case, it was up to the jury to do the sloshing. Plaintiffs had the opportunity to, and did in fact, add to the aforementioned morass the question of whether Falat could have warned Grigsby before shooting him. But it was still just one of a myriad of facts for the jury to consider. The Court's instruction was not confusing or misleading as to the proper inquiry for the jury as it considered those facts. The Court instructed the jury that reasonableness was to be its guide in determining whether Falat violated Grigsby's constitutional rights. It was not necessary, nor appropriate, for the Court to direct the jury's focus more specifically to one fact among many that would play a role in that determination. If Falat's failure to warn was in fact as unreasonable as Plaintiffs suggest, the Court presumes that the jury would have found in Plaintiffs' favor. After all, the Court frequently trusts juries to answer questions regarding reasonableness; that is the jury's proper role. For these reasons, the Court finds that Plaintiffs were not prejudiced by the Court's failure to instruct the jury about any duty Falat may have had to warn Grigsby before using deadly force.

Because the Court's instruction was proper, and because Plaintiffs had ample opportunity to present testimony and make arguments relevant to their contention that Falat failed to take the

5

reasonable step of warning Grigsby before shooting him, the Court also finds that Plaintiff was not prejudiced by its inability to present its expert's testimony. Once again, the Court notes that it was well within the jury's capability to make its own determination as to the reasonableness of Falat's actions.

## *CONCLUSION*

For the above reasons, the Court denies Plaintiffs' motion for a new trial.

IT IS SO ORDERED.

___6/6/11___  
Dated

___Wm. J. Hibbler___  
Hon. William J. Hibbler  
United States District Court